QUESTION:
May a unit of local government in Broward County that has issued a development order pursuant to s. 380.06, F. S., of the Florida Land and Water Management Act of 1972, ss. 380.012-380.10, F. S., adopt a comprehensive plan for future development and growth pursuant to either the Local Government Comprehensive Planning Act of 1975, ss. 163.3161-163.3211, F. S., or the Broward County Charter that, in effect, amends such development order?
SUMMARY:
A unit of local government in Broward County that has issued a development order pursuant to s. 380.06, F. S., of the Florida Land and Water Management Act of 1972, ss. 380.012-380.10, F. S., is prohibited from adopting a comprehensive plan for future development and growth pursuant to either the Local Government Comprehensive Planning Act of 1975, ss. 163.3161-163.3211, F. S., or the Broward County Charter that in effect amends such development order.
Chapter 380, F. S., the Florida Environmental Land and Water Management Act of 1972 [hereafter `Chapter 380'], was enacted in order to protect Florida's natural resources.
 It is the legislative intent that, in order to protect the natural resources and environment of this state as provided in s. 7, Art. II of the State Constitution, insure a water management system that will reverse the deterioration of water quality and provide optimum utilization of our limited water resources, facilitate orderly and well-planned development, and protect the health, welfare, safety, and quality of life of the residents of this state, it is necessary adequately to plan for and guide growth and development within this state. In order to accomplish these purposes, it is necessary that the state establish land and water management policies to guide and coordinate local decisions relating to growth and development; that such state land and water management policies should, to the maximum possible extent, be implemented by local governments through existing processes for the guidance of growth and development; and that all the existing rights of private property be preserved in accord with the constitutions of this state and of the United States. [Section 380.021, F. S.; emphasis supplied.]
 Sections 163.3161-163.3211, F. S., the Local Government Comprehensive Planning Act [hereafter act], was enacted in `conformity with and in furtherance of the Florida Environmental Land and Water Act of 1972, Chapter 380'; and the act's purpose is to:
 . . . utilize and strengthen the existing role, processes, and powers of local governments in the establishment and implementation of comprehensive planning programs to guide and control future development. [Section 163.3161(2), F. S.]
Thus, s. 163.3161, et seq., and Ch. 380 must be read together in their objectives of guiding development and growth and the protection of private property interests as well as protecting environmental quality.
Section 163.3167(10), F. S., provides that:
 Nothing in this act shall limit or modify the rights of any person to complete any development that has been authorized as a development of regional impact pursuant to Chapter 380.
According to your letter, many developers in Broward County have contended that in enacting s. 163.3167(10), F. S., the Legislature intended to create a new `vested right' with its sole element being the existence of either a development order or permit granted by a unit of local government pursuant to Ch. 380, or a binding letter of interpretation as to vested rights issued by the Division of State Planning pursuant to Ch. 380.
For the reasons that follow, I believe that the Legislature intended s. 163.3167(10), F. S., to operate on local government units so as to prohibit any action under either s. 163.3161, etseq., or a county charter which would effectively amend or alter a development authorized pursuant to Ch. 380.
When Ch. 380 was enacted in 1973, the Legislature at s. 380.06(12) `grandfathered in' projects which met certain criteria as of July 1, 1973. This function of the `grandfather clause' has been said to be consistent with the express legislative intent of Ch. 380 which is to preserve existing rights of private property owners in accordance with the Constitutions of this state and of the United States, and with a presumed intent to protect Ch. 380 from unconstitutionality through retroactive application that unlawfully impairs vested property rights. See Rhodes, The FloridaEnvironmental Land and Water Management Act: The First OperationalYear, The Florida Bar Journal, April, 1975, at 217; also see
6 Fla. Jur. Const. Law s. 253.
Pursuant to s. 380.06(4)(a), F. S., the Division of State Planning has been empowered to issue `binding letters of interpretation' as to whether rights have been vested pursuant to s. 380.06(12), F. S. The statutory criteria for vesting for the purposes of s.380.06(4)(a) and (12), F. S., which have to do with the vesting of such property and other legal rights of the developer and property owner, include the following acts which must occur prior to July 1, 1973: Complete any development authorized by registration of a subdivision pursuant to Ch. 478; or recordation pursuant to local subdivision plat law; or issuance of a building permit or other authorization to commence development on which there has been reliance and a change of position and on which recordation or registration was accomplished or which permit or authorization was issued prior to the effective date of rules issued by the Administrative Commission on which there has been reliance and a change of position. Further, Ch. 380 was amended in 1974, to provide a means for determining the vesting of rights under s.380.06(12), F. S.: Approval pursuant to local subdivision plat law, ordinances or regulations of a subdivision plat by formal vote of a county or municipal government having jurisdiction after August 1, 1967, and prior to July 1, 1973, shall be sufficient to vest all property rights and no reliance or change of position concerning such local government approval shall be required for vesting to take place.
Chapter 74-326, Laws of Florida, also provides in pertinent part for binding letters of interpretation on developments of regional impact and for determining vested property rights: Conveyance or agreement to convey property to the county, state, or local government as a prerequisite to zoning change approval shall be construed as an act of reliance to vest rights [as determined under subsection (12)] provided such zoning change is actually granted by such government.
Moreover, if a developer has, by his actions in reliance on prior regulations, obtained vested or other legal rights that in law would have prevented a local government from changing those regulations in a way adverse to his interests, nothing in Ch. 380 authorizes any governmental agency to abridge those rights. Section 380.06(12), F. S.
When a property owner acquires a vested right as defined in Ch. 380, he does so insofar as the application of that act to his particular development is concerned. It does not relieve him of the requirement to obtain additional development permits, as defined by s. 163.3167(16), F. S., or s. 380.031(3), F. S., if required under those statutes or other statutes or charters or local ordinances. Sarasota County v. General Development Corp.,325 So.2d 45 (2 D.C.A. Fla., 1976). However, the application of s.163.3161, et seq., has been limited statutorily by the Legislature at s. 163.3167(10), which states that:
 Nothing in this act shall limit or modify the rights of any person to complete any development that has been authorized as a development of regional impact pursuant to Ch. 380.
Thus, all that is required insofar as s. 163.3167(10) is concerned is an authorization to commence development pursuant to Ch. 380. This, of course, can occur two ways — through issuance by the Division of State Planning of a binding letter or interpretation, or through successful completion of the DRI process. The statutory vesting created at s. 380.06(12) has been applied by the Legislature to s. 163.3161, et seq., to prohibit the application of the Local Government Comprehensive Planning Act when either `traditional' or statutory vesting exists under Ch. 380.
The Division of State Planning has promulgated rules at 22 F-1.22, F.A.C., which empower the division to revisit DRI orders as follows:
 (1) If a development order is issued approving with conditions the application for development approval, subsequent requests for local development permits need not require further development of regional impact review unless otherwise stipulated in the development order. Factors requiring further development of regional impact review may include, but shall not be limited to:
 (a) A substantial deviation from the terms or conditions in the development order or other changes to the approved development plans which create a reasonable likelihood of adverse regional impacts or other regional impacts which have not been evaluated in the review by the regional planning agency, or
 (b) Expiration of the period of the effectiveness of the development order; or
(c) A finding of an existing emergency condition.
 (5) Copies of all development orders pertaining to a development of regional impact including any amendments or modifications thereto shall be transmitted by the local government to the Division of State Planning, to the appropriate regional planning agency, and to the owner or developer of the property subject to such owner. (Emphasis supplied.)
While s. 163.3161, et seq., permits charter counties such as Broward to `exercise such additional authority over municipalities or districts within its boundaries as is provided for in its charter,' s. 163.3171(2), F. S., and permits the charter to control as to planning responsibility between the county and the several municipalities, s. 163.3174(1)(b), F. S., the remainder of s. 163.3161, et seq., F. S., is applicable to and must be given effect in charter as well as noncharter counties unless the provisions of s. 163.3161, et seq., are met or exceeded by other provisions of law relating to local government. Section 163.3211, F. S.
Section 6.06 of the Broward County Charter provides that:
 A. If a person, firm or corporation has, by actions in reliance on prior regulations, obtained vested or other legal rights that in law would have prevented a local government from changing those regulations in a way adverse to its interests, then nothing in this Charter authorizes any governmental agency to abridge those rights. (Emphasis supplied.)
 B. Nothing in this Charter authorizes any governmental agency to adopt a rule or regulation or issue any order that is unduly restrictive or constitutes a taking of property without the payment of full compensation, in violation of the Constitution of the State of Florida or of the United States. (Emphasis supplied.)
While s. 6.06 could be characterized as a recognition within the charter that land-use planning in Broward County must be done in conformity with established legal and equitable rights of property owners, this provision of the charter has in effect been modified by the Legislature by the enactment of s. 163.3167(10), F. S. Section 1, Art. VIII, State Const., provides that counties operating under county charters shall have all powers of local self-government not inconsistent with general law.
To the extent that s. 6.06 is inconsistent with s. 163.3167(10), F. S., the latter provisions must prevail.
Accordingly, I am of the view that the Broward County Charter, insofar as recognition of vested or other legal rights is concerned, has been modified by the Legislature to recognize new statutory rights created by the Legislature through operation of s. 163.3167(10) and Ch. 380. Therefore, a unit of local government in Broward County is prohibited from adopting a comprehensive plan for future development pursuant to either the Broward County Charter or s. 163.3161, et seq., which in effect amends a development order or permit issued pursuant to Ch. 380 or affects a binding letter of interpretation as to vested rights also issued pursuant to Ch. 380, F. S.
Prepared by: James D. Whisenand Deputy Attorney General